Hawkins, J.,
delivered the opinion of the Court.
In this cause there was a verdict and judgment, in the Court below, in favor of the defendant in error. The plaintiff in error moved for a new trial, which was *377 overruled; and be has appealed to this Court. It is now insisted that the Circuit Judge erred in overruling the motion for a new trial. In support of this motion, the plaintiff in error offered the affidavits of A. R. Hipp, H. C. Hays, and T. J. Spurlock.
Hipp, states, in substance, that one morning, before sun-rise, during the sitting of the Court, and after the jhry had been empaneled, and a portion of the witnesses for the plaintiff had been examined in this cause, on the -evening before, he heard one of the plaintiff's attorneys talking very loud about the cause, in the presence of two or three of the jury trying the same; when, among other things, he said: “If the jury trying the cause had a d — d bit of good horse sense — .” Just at this point some one spoke, saying: “You had better hush, some of the jury are present,” to which the attorney replied: “It makes no difference — your cause is now won.” About this time the defendant made his appearance, and said: “ Gentlemen, before I would express myself justifiably, in the presence of the jury, I would lose my suit.”
Hays states, in substance, that on the same occasion, he was at a grocery, said attorney was out in the street, near the grocery, talking very loud about the evidence in this cause, and soon came into the grocery and continued talking about the cause, when some one said to him: “You are doing injustice — there are two jurors in the house,” to which the attorney replied: “I ask pardon, I will say no more; I had not noticed it.” One of the jurors then said: “It makes no difference^ the case is won, any way.”
*378 Spurlock, states, in substance, that on the same morning, before sun-up, while walking the street, some distance from the grocery, he heard said attorney talking very loud, as if he was making a speech, in the street, near the grocery. Affiant and the attorney went into the grocery, after which the attorney continued talking very loud about this cause, when some one told him, “some of the jurors were present, and he ought not to talk that way; that it was wrong” — to which he replied: “ Gentlemen, I beg your pardon.” Some one then said: “It makes no difference, your suit is won any way.”
It is insisted this was such a tampering with the jurors, by the attorney of the plaintiff below, as would authorize the Court to set aside the verdict, and grant a new trial. The conduct of the attorney, as shown by these affidavits, was certainly most unprofessional, indelicate and reprehensible, and for which, it may have been the duty of the Court to have stricken his name from the roll of attorneys. Yet, we do not think it was such a tampering with the jurors, as would authorize this Court to grant a new trial, after the Circuit Judge, who had heard the whole case, had refused to do so. The conversations, as it seems, were in a public place, and a portion of them, at least, in the presence of the defendant, in a grocery; a place, however, which seems to us should have been the last to have been selected by a member of the legal profession in which to discuss his law suits; and on being reminded by some of the by-standers that some of the jurors were present, and he was doing wrong, he im- *379 mmediately desisted from all further conversation upon the subject; from which we infer the attorney was not so far forgetful of the rules of propriety by which practicing attorneys should be governed, or the duties which he owed to himself, the litigants, the Courts, and the country, as wilfully and corruptly to attempt to tamper with jurors, or thus to influence their verdict.
It has been said, in argument, that no precedent is to be found, bearing directly upon the question involved in this case. If none is to be found, it is a fact highly creditable to the profession, and it is to be hoped that neither this nor any other Court, will ever find itself under the necessity of making a precedent in a case where an attorney of the Court has been guilty of conduct so unprofessional, demoralizing, and degrading, as that of corruptly tampering with a juror; and we are gratified to find, upon an examination of the record, that the facts do not make out such a case against the attorney in this cause. Did they do so, it would have been the imperative duty of the Court, not only to set aside the verdict, but to have inflicted upon the attorney the heaviest penalties authorized by law.
The fountains of justice, and all the streams that flow therefrom, must be kept pure and uncorrupted, and the Courts of the country can have no higher duty to perform than to- see that justice is administered to all according to law; and to this end, it is important, if not indispensable, that everybody con *380 nected with its administration should stand above suspicion, and carefully abstain from all conduct which might tend to bring reproach upon the judicial tribunals of the country, and the laws of the land into contempt.
Affirm the judgment.